and Octavius McClendon. And I forgot to do this yesterday, Mr. Clue, with you and with others, and I want to do it now before I forget. I want to thank you and Mr. Howard. We know that you're both court appointed, and we truly, truly thank you for your service, not only to the court, but to your clients as well. Mr. Clue, whenever you're ready. Thank you. May it please the court, the order that we are appealing from, we are quibbling only with two components of it. And those are the first and foremost, what we believe was a clear legal error, a simple misanalysis of a clear point of law. And that was in the analysis of someone who is convicted of solely on an aiding and abetting theory in a joint trial with the principal, where the principal's trial is tainted by constitutional error so that the verdict that resulted in that joint trial by constitutional error can no longer have any confidence. It necessarily is the case that those that were swept along with that conviction in that joint trial on an aiding and abetting theory also must have a joint trial, a new trial. Procedurally, let me ask you this question to follow along where you're going. Are you arguing under the aiding and abetting, which was only count four, are you arguing that you're only entitled to a new trial as to count four? Because it looked like your original motion was asking for a new trial on the, well, your clients were convicted of all four. So is that what you're asking for, only a new trial on the aiding and abetting? Well, I'm taking the one step at a time theory of this and I want, I feel, I felt that in the district court that matter was not even disputed by the government until we got the decision and the decision came out and the district court cited a case that we felt had no relevance at all because it had to do with as it would ordinarily do and has defended the district court throughout. However, we feel that error is wrong. So I just, I feel that that piece of the puzzle is a clear legal error. It's the simplest part of the case to deal with. That's why I've separated it out. But we are pursuing the second component of our argument is that the second error that we're quibbling with in the district court's order is its materiality analysis and in particular, if you deal with a separate, the two clients, particularly in failing to appreciate how significant the effect of Agent Dante Jackson's testimony in his role in the case was on the conviction of Mr. McClendon and hence necessarily then on the conspiracy conviction for Mr. Bryant as well. So, but, but that is a, that is a, I'm just saying that, that part of the puzzle is a, that's a bigger puzzle to fill in. Whereas I wanted to start out with the littler puzzle of the, what we feel is a clear legal error that the government did not even argue and was a surprise to us when it came out in the report and recommendation. The, with regard to the bigger part of the puzzle, what we have in this case is the central figure in the government's investigation, the undercover agent who is the core. He is the undercover FBI agent in the case who is doing the recordings, who is having the relationship with Mr. Bryant, who is essential. He is the fundamental core of the investigation. His name is Dante Jackson. Is, he then becomes the government's first and star witness at trial. He interprets every bit of evidence that comes in. He is repeatedly referred to and used by the government as a tremendous authority on drug matters so that he can opine and explain the failure of this investigation with regard to McClendon and Mack. When the failure was, particularly as to McClendon and also to, with regard to Mack, they never did what you're supposed to do in this circuit is to prove that when some people are involved in some criminal activity, that they know the activity they're involved in is drug activity. And there's been case after case after case in this court that says people, conspirators who are being paid a lot of money to move a suitcase from point A to point B don't necessarily all know that there's drugs involved. So it's, the government needs to try to prove that the underlings, the bag man, my guy, the bag man, for example, McClendon, knows. And so what the government failed, completely failed to do in this investigation is ever, in the presence of Mr. McClendon, ever use one of the words or one of the codes that you would say. He never said, they never said, oh, this is a Colombian, great Colombian stuff, or this is, you know, we have to move this merchandise. I mean, they never used anything that would have dispelled what was the original plan and what Bryant logically could have originally told McClendon and what he later in an affidavit said, specifically said he told Mac, which was this is about money. The premise of this case, again, even more so than an ordinary case, was that this was a money laundering operation. Dante Jackson, the agent, was playing the role of working with a Russian mob-operated club, Dolce, in Miami Beach. And he was laundering money for them. At some point in time, and it happens at a time when a tape recording is, it vanishes, and at some point in that tape recording, Mr. Jackson claims that he transitioned the case from money laundering to drugs. But for you, let me just interrupt you for a second and make sure, I know your argument on appeal centers on the denial of a motion for a new trial to Mr. McClendon and Mr. Bryant, but you haven't challenged the general sufficiency of the evidence to convict, right? Because you started that argument by saying the government didn't do what it's supposed to do in these cases. But on appeal, although you think the evidence is thin, you haven't challenged the legal sufficiency of the evidence to convict your clients, right? I haven't only because it's not a, not part of the burden. And I didn't, I thought it was, it's not part of your burden. I'm just asking you whether you are, I don't feel. I'm not challenging the sufficiency of the evidence. If I could procedurally raise that issue at this point, I would. I did raise sufficiency in, on appeal. I handled the case on appeal originally. I know. And I raised sufficiency. I believe that evidence was, was insufficient even when we had Jackson as a credible witness. I still thought it was insufficient. Right. But at this point, you're stuck with the legal sufficiency of the evidence, right? I think for practical purposes, that's the law of the case. Although I don't know how you, again, with the, with the new trial analysis, the first and most important point about it is that unlike the, the standard of review of the record is not the same standard of review of the record you have on a sufficiency issue. The standard review of the record is more of a holistic, well, what would have happened if the defense had thrown this punch? And what would have happened? How would the government have reacted then? And so it's more of a, of a, of a dynamic thing that does not look to the light, in the light most favorable to the government. It looks in the light of what reasonably could have happened so that we can be confident in the result given the constitutional error. Where do you think the, the magistrate judge in the district court went most seriously wrong? I think that the fundamental problem is that they ignored the, the, the series of cases. Go back to a case that I had with Judge Edmondson 30 years ago, Martinez, you know, where, where guys go into, they're hired to go do a stash house robbery. They go in, they pick up 50 kilos of what's supposed to be cocaine in suitcases. But the only one who's told that there's cocaine in the suitcases is, is my client. And he, and the other, other clients weren't told and that the evidence was insufficient. And I don't think that they, I think it's a very difficult concept, but that's been the law of this court for, for nearly 30 years. And, and it's, and, and with all of the evidence, when you take Jackson and his saying, him saying, oh, this means drugs, oh, this means drugs, oh, this means drugs, completely absolutely non-coded language. In other words, he never says, oh, this is drug code. The only time he says that is as to Mac. And so the time that he actually does something that actually proves something as to Mac, the district court said, yeah, I mean, that's really problematic. We have to give Mac a new trial. So it shouldn't be worse for my client because he never even did that. And, and so the, the other evidence that government relies on is this. But, but wasn't the theory of sufficiency, which I know you dispute, that whatever Mac knew or had been told had been passed on to his supposed confederates, Mr. McClendon and Mr. Bryant, and therefore that's why they were ensnared in the conspiracy? Well, I think that the, the, the government's argument, if you look at the, their argument in the initial brief, again, and those are, again, it's so difficult to keep, to juggle these two standards of review of the record at one time. But under the, under the review of the record in the light most favorable of the government, then you have a ton of evidence by Jackson saying that, oh, this means drugs and he wouldn't have done this. He wouldn't have gone in the SunPass lane unless he was carrying drugs. Oh, he wouldn't have wanted a smaller bag unless he was carrying drugs. And this is Jackson as an, oh, you could never wrap money. That was another, another line. Jackson was the narcotics agent. Tyson, the one that they was not a narcotics agent. He was, he was a Baltimore police officer that had very limited experience with money operations. And Jackson comes up with this theory that, that, you know, that the court of appeals, this court relies on, it says, oh, you don't wrap money. I remember arguing to the, to Judge Marcus, I remember in this very courtroom five years ago, whatever it was, asking me for examples of when you wrap money because asking me for something that would dispute what, what Jackson had said about you don't wrap up money. And of course, I knew from my cases, I had lots of examples, but I wasn't able to cite the Coyard case and some of the other cases until we had the new trial motion. But the case laws legion, whether you do wrap money that way, his testimony was wrong and it's, but it was effective. But we're not, we're not considering whether, whether your clients would have been convicted without the testimony of Jackson. We're considering, we're considering the Brady issue, which has, as you know, the four prongs. How does your argument fit within the question that we're looking at at this stage of the proceedings? Well, in terms of, again, going back to what I'm disputing with the district court's finding is this, did it undermine confidence? And that's a very, certainly it's, it's a de novo review of whether it undermines confidence. My feeling about it is that, of course, it undermines Jackson to such extent, such an extent that if I were the someone on the stand who has just in the previous months completed a major obstruction of a murder investigation so that he could protect the fellow who is his, his other Russian handler, who got him into this exact strategy of how to handle these Russian club drug money transport things, the exact template, which was created by Chlopaev, that they want to put him on the stand and saying, yeah, you can trust me, everything I'm telling you about money, even though I just obstructed a murder investigation, a man cold-bloodily assassinated somebody in the hospital parking lot in Atlanta, and I was trying to keep the Atlanta police, the Sandy Springs police from getting to, to finding out this guy because this guy had given me, I don't know whether it's a hundred thousand, he'd given me all kinds of, of bribes over the, over the period of the last year. I don't think the jury then believes him when he says this ridiculous testimony about, oh, you don't drive in a sun-passed lane except unless you're carrying, when you're carrying drugs, or you don't, you want a smaller bag when you're carrying drugs, but you don't want a smaller bag when you're carrying money. So I think that it's fundamental, I don't think they call him, whether he, well, I don't think he testifies, first of all, because at that point he's, he's got a Fifth Amendment privilege, and we have the exact evidence of what happens. He didn't testify. I called him, I pushed it, I had another day of hearing set. I couldn't get the guy to testify, and he wouldn't testify. So either he wouldn't testify, they wouldn't call him, or if he did call him, that would be our case. And, and there was a lot more that would have come out in terms of the dynamics of the case. Bryant had made statements post-arrest that were not admitted. It was a big issue in the appeal, not in my case, but in, in, in Mac's case, you know, he had made exculpatory statements saying, look, I ever, I, I specifically told Mac it was money. I specifically told Mac it was money. I mean, later than I added to that something that he'd said more exculpatory of McClendon. But there was, there was evidence that the judge would have likely let in. I mean, this was a major problem. The, you know, the Whitey Bulger story is the only analogy that I can think of where they let Agent John Connolly, it allowed Whitey Bulger to kill people because he had a good informant. This is the close, the closest analogy to him in American law that I can think of to this guy where he's so happy because of what he's getting from over a drug debt that is using the very vehicles, the very vehicle operation that is being used to bribe him and, and the very types of techniques that he would learn from him. I'm sorry, I know my time has run out. No, that's okay. If I may, I've got one more question. There's some disagreement between you and the government over the status of Mac's, Mac's conviction and proceedings and all of that. Can you tell us your position on that? Well, I mean, I have, I have, I mean, you could look at my position as being technical, which, but I find very important to have a technically correct position. We have an order, the order's final. There's no question about what the order says. The order adopts the report and recommendation in total. That's it. For my purposes, that's what I have. I don't see it as something where you'd remand and say, did you really mean it? Did you really mean to adopt the order? I mean, the judge adopted the report and recommendation in total. It was a, it was a delicate complex of things and he adopted it in total. So I, I don't think it's fair to then go back and say he didn't mean it. Now, in terms of resolving a case, it's true that Mac's case, months later, the government and Mac reached a resolution. The government and, and we tried to reach a resolution as well and it was offered to the district court and it wasn't accepted. So I don't think that post-order stuff should affect the resolution of this case. Thank you. All right. Thank you, Mr. Clue. You've saved your time for rebuttal. Mr. Shipley. Good morning, Your Honor. John Shipley of the United States with me at counsel table is Bob Senior who represented the United States in the new trial proceedings. Good morning to both of you. Good morning. The bottom line is here that even if Jackson had been thoroughly discredited or not testified at all, there's no reasonable probability on this record of a different outcome. Let me just go through a couple of points that Mr. Clue mentioned, then I'm happy to address any issues the court may have specifically. First of all, just as an evidentiary matter, it was Tyson, not Jackson, who testified about the fact that money would never have been wrapped up the way this was. I think Mr. Clue may have misspoken there. It was Tyson who testified that in response to the, if you recall, there was the key point with regard to McClendon and that's all that Mr. Clue is talking about. You have Bryant in taped conversations talking specifically about cocaine. I mean, that's a complete non-starter to suggest that would have changed at all. It's on tape where Jackson is saying to Bryant, this is cocaine, two times in the December 9th conversation. So I think that's why we don't hear much about Bryant because none of that would have changed whether Jackson testified or not. As to McClendon, there's a conversation on December 21st. All the times McClendon is involved in the activity in this case, Tyson is there. It's not just Jackson and it's all on tape. So you can take Jackson completely out of the picture and none of it changes that evidence. In that December 21st conversation, the packages come out, McClendon talks about how he doesn't want to travel on SunPass. That's not Jackson's testimony. That's McClendon on tape saying we can't go on this particular road in Miami because it'll be the SunPass. The packages then come out. They're wrapped and concealed. They're bricks. You can't see what's in them. And Tyson says, again, on tape to McClendon and to Bryant, no deviation, no taste, no test. Y'all don't get high. So there, again, you have an explicit reference, I think, to the fact that these are drugs made in McClendon's presence. Now, McClendon then says there's a discussion. Tyson says, you know, you all take care of this. There's a lot of risk. This is money. That's the only basis for the defense that was argued on sufficiency back in when this matter was before the court a few years ago. It was Tyson who made that comment, and it was Tyson who said there's no way anybody could have thought this was money because money, when it's used in these kind of transactions, is always available and open for inspection, unlike drugs. And in fact, when the defendants are paid, when they're given their cash after they come back after dropping off the sham cocaine, they're handed bundles of cash, open and exposed, just wrapped in rubber bands. So the point being, all that is just to correct that argument when we go to sufficiency. There is simply, I'm sorry, not just, the evidence has already been found sufficient by this court previously, but it is material to the issue of whether there would be a different outcome or a reasonable probability of a different outcome on the new trial review. Even if Jackson had not testified, that would have been the same. Let me ask you, Mr. Shipley, about Mr. McClendon and the 924C charge. It seems to me that it may not be legally significant, but there's certainly a factual difference between Mr. Bryant and Mr. McClendon with regards to the weapon that Mr. Mack possessed, it seems to me, because Mr. Bryant was present, as I understand the record, at the meeting where Mr. Mack appeared with his weapon, whereas Mr. McClendon was not present at the meeting, but was present at the deal and saw Mack's car following them. That may be legally sufficient to uphold a conviction, but you don't think there's any issue with Mr. McClendon's 924C conviction? I mean, there's no direct evidence of seeing the weapon, of knowing he would be armed. It's all circumstantial. It's all inferential. Sure. Let me address it a couple of ways, Your Honor. First of all, as to the sufficiency issue, obviously, as you pointed out, that's already been decided by this court previously. If the analysis, if the question is how does potential credibility issues involving Jackson affect things now from a reasonable probability standpoint, the answer is none. So that evidence is exactly the same. Jackson had nothing to do, the evidence against McClendon on the gun count is entirely driven by Tyson and the tapes. So that doesn't change. So I understand Your Honor's question, but that question is no different today than if it had been when the issue of sufficiency was first litigated, because Jackson had nothing to do with any of McClendon, nothing at all. They're all on tape and they're all with Tyson there. And it's Tyson who, as the magistrate judge pointed out, is the key, if not the key witness on all fronts, is certainly the key witness with regard to McClendon. In addition, Your Honor, oh, I'm sorry. So there was no testimony with regards to, by Mr. Jackson to weapons or who would possess one or who might need one or why they wanted Mr. Mack as an officer to carry one. There was nothing in that regard from Mr. Jackson? Nothing except speaking about what was on the tapes. That's all tape. There's only one recorded conversation. That's the very first one on December 2nd. Everything else is on tape. This is not Jackson's independent testimony or where you have a situation he's just recalling a conversation for which there's no other evidence. He spoke about what his understanding of certain things said on the tapes were. But this is all on tape. I know, but a lot of the conversations, and maybe not this one, but a fair number of the conversations required some interpretation which Mr. Jackson was able to provide. I think Jackson provided interpretations of what he meant. I think Judge Moreno was very strict about this. I know the argument they make in their brief, I tried to go through what was actually said during the trial. Judge Moreno was pretty strict about saying, look, you can't defend and said, but you can certainly say what your understanding of things were in order to explain your actions. I think he was very strict about that. That was an issue in the first part of Jackson's testimony when you go back and read the transcript. So I don't agree that there was interpretation of what the defendant said that wouldn't have been proper testimony. And I don't think that was allowed. So Mr. Jackson, in your understanding of the record, didn't provide any testimony with regard to the gun issue? I think he spoke about references to guns that were involved on the tape. There was testimony that I believe actually came as much or more from Tyson as to Mack showing up at the breakfast meeting on January 14th. What happens on that day, that's the second of the drug runs. Jackson, they meet for breakfast. Mack shows up. He's in uniform, but without his name tag. He is armed. I believe there's testimony from Jackson, but also from Tyson. I don't think there was any dispute that he showed up armed. And I don't think there was any dispute at all, even from the defense at trial, that Mack was armed on that. The only issue with regard to Mack on any of his counts was his knowledge. You don't mean Mack's knowledge, because Mack obviously knew he was carrying a gun. Right. I mean Mack's knowledge of whether this was a drug transaction. So I don't think, certainly there's testimony by Tyson, and may also be from Jackson, that he showed up armed to that meeting. There are also tape-recorded conversations where Bryant is saying to Jackson, saying, I'm going to be armed for this transaction. And the 11th from Bryant. But the premise, the problem is with all of this argument for Mr. Kluge, the premise of it is simply wrong. There was no new trial. I mean, this is an interesting hypothetical discussion. Wait, no. That takes me right back to the original question that I asked in regard to the 924C. And it's been partly answered in that the trial court granted the trial under the report of the magistrate under the R&R, which included Mack. There's no question as far as I understand that he was granted a new trial on the 924C. Is that correct? No, Judge. Let me try and explain what my understanding of the record that I think is borne out by the doctor. What happens is there's a report and recommendation. The R&R does not That's correct. That's a report and recommendation. That goes up. The district court objections are filed by the government, by the Bryant and Mack to the denial of their new trial request, and by the government to the order for a new trial on Mack, because we thought and we still think there's no basis for that. Well, you got problems with me on that, but go ahead. Okay. Well, we're sort of past that issue, as I think the district court, what it did lays out. So that goes up. Didn't the district court grant? No. Because the opposing counsel said it did. The order says unequivocally that Mack is given in there. So that's not correct? No, Judge. Here is what happened procedurally. Goes up on the R&R. Objections are filed by the government to the portion of the order addressing Mack. Objections are filed by Bryant and McClendon. On the same day, the district court issues three orders. One order denying a new trial. This is docket entry, I think, 304, 305, 306. One denying a new trial to Bryant. An order denying a new trial to McClendon. And on Mack, setting it down for a hearing and further argument. Presumably because the court recognized that the government's objections were at least meritorious enough to has argument on the government's objections regarding Mack. And in the meantime, before it issues a ruling, there is a resolution between Mack and the government, and the court issues a order and a judgment pursuant to that agreement, sustaining, imposing judgment on count four on not granting a new trial, granting a new trial as a procedural mechanism on counts one and three, and the government then dismissed those counts. Well, he pled guilty to count four, right? Correct. Correct. But the court never, the district court did not enter an order at any point saying Mack gets a new trial. But you can't plead after you've been convicted. Well, yes. I mean, you have to, you have to set aside the conviction. But the court, what the court did, I think, procedurally pursuant to the agreement, and there's a copy of the agreement on the, in the record, he had already been convicted on count four. So he didn't really plead guilty on count four, other than the court entered an amended, I believe the court did an amended judgment, keeping the conviction on count four, and then in a tag-along order, granted a new trial on counts one and three, and granted the government's to dismiss, motion to dismiss those counts. So technically, Judge Jordan, you're right. I mean, that wasn't, was not a, let me correct that, was not a guilty plea. The court entered an amended judgment retaining the order, retaining the conviction on count four that had been yielded by the trial. But either way, what the, if the district court didn't grant a new trial to Mr. Mack, it didn't sustain your objections either. It didn't, it did not. Right. So what we have on this sort of record is a magistrate judge, after a full hearing, recommending a new trial for Mr. Mack. We do have, we do have that, and the government filed objections. I mean, isn't this? Those were, we believe they were, they were persuasive objections. There was no basis for it. It seems like some real middle maneuvering going on here in regards to, I know it's not a legal test, but there's a smell test that's out there as to what happens when you get Mr. Mack still under the 924, and it appears it's widely argued that because he, that still stands on the basis of the sufficiency of the evidence then that Brian and McClellan do not get a new trial. And that seems to be, to be the whole argument as to the inconsistency of what's actually happened on this record in regards to that. That's what's kind of bothering me. Sure. I believe it is reflected in the, I don't know those transcripts are actually part of the record on appeal, but the proceedings in front of Judge Moreno related to the resolution with Mack are all on the record. Those are two transcripts in the, reflected on the docket. There are also pleadings in the docket reflecting the government's agreement. So there was nothing, nothing underhanded about it, and the discussions with Judge Moreno, including public record discussions of plea agreements involving the McClendon were put on the record. So those are out there. There's nothing underhanded. And we're talking at the end of it. I'm not, I'm not saying underhanded. I'm just saying the the smell to it. But let me ask you this question. Are, do you believe that opposing counsel is asking for a new trial on, they were convicted on all four issues, whereas Mr. Mack was not convicted on two. Are they asking for a new trial on all four of their issues, or in your opinion, are they only asking for a new trial in regards to the 924c? My reading of their brief is that they are seeking a new trial on, on everything. I think they have a different argument on count four. They sort of have a, what you call a subsidiary argument or a sort of separate piece of it, sort of saying, even if you were to find that there was no basis for a new trial on the other counts, there is a basis for a new trial on count four, because by their interpretation of the record, the district court granted a new trial for Mack, and so therefore we get one too. Now that's legally mistaken as well as factually mistaken. But that's what I understand their, their argument to, to be judged. Well, it comes down to the, if you can't have the whole apple, they at least take part of the apple if they can get a new trial on 924c, which is the aiding and abetting provision in regards to that. And that, in looking at the briefs, that was. That's my understanding. I think you're right. That's my understanding of their argument. Again, I, I think there are at least three, you don't have a district court order granting a new trial. So all of this is hypothetical. If you were to get into this issue, I think you'd have to look at the government's arguments as to why no new trial was warranted on Mack at all. I mean, we steadfastly argue that and we stand by that in an otherwise comprehensive order. Magistrate Judge O'Sullivan, I think was mistaken in terms of the evidence against Mack. He attached a lot of importance to a reference to, to Mack, that the shipment was going to involve t-shirts and that sort of treated it as if that was the only evidence against Mack regarding his knowledge. And that's not correct. Maybe it was, in your view, mistaken, but maybe it was just a visceral reaction to the horrible, horrible optics of the government trying to keep together convictions after a case agent has engaged in this sort of misconduct. And I'm not casting blame anywhere, Mr. Shipley. It's just a personal observation for me that I don't ascribe to my colleagues. But every once in a while, something happens that the government is not responsible for, but it puts on a case that leaves people shaking their heads. And it's not going to affect my judgment in this case, but I'll tell you, this is one of those cases. I mean, this is horrendous. The conduct that the agent was purportedly involved in. And when the government seeks to try to keep convictions like that in place, in the face of that, people sit back and think, wow. You don't have to respond. It's just a personal observation on my point. May I respond briefly, Judge, if it's okay? Of course. I understand that. And I respect that view. And certainly I'm not up here to defend anything Jackson did. I won't get in the weeds of it. I think their brief and their characterizations overstate both the timing of the conduct and also potentially overstate what Jackson did with regard or didn't do with regard to the case in Georgia. He has not been criminally charged with obstruction in any forum. And he did provide the names of the individuals who actually committed the murder. But I'm not going to defend, I'm not defending that. Whatever you think of that conduct. Bottom line is, this is a case about drug trafficking involving corrupt public officials. These were serious crimes. These are defendants who breached the public trust and committed terrible offenses themselves. So ideally, obviously, if the government had known about any of these issues regarding Jackson, he might not have been called a witness. He certainly wasn't necessary. The tapes came in. Tyson was the key witness. It was not a position the government would have probably put this prosecution in. Because these were bad guys betraying public trust and doing bad things. So I understand Your Honor's concern, but I think there's countervailing considerations as well. And this truly was. There is no allegation that anyone in the prosecution team, other than Jackson himself, knew about this conduct. I'm not suggesting anything close to that. I just want to make sure the record is clear on that. That this was a serious prosecution of corrupt public officials and a righteous one. No, I think the magistrate judge's order makes that pretty clear. And you may be correct, Judge Jordan, as to what Judge O'Sullivan's take on things was. And I would understand that. But from a legal standpoint, from where you look at things now on the Court of Appeals, you do not have a new trial order from the District Court in Count 4. We don't agree that there would be a legal basis for it anyway. So all of these hypothetical questions about what would be the effect of a new trial order on an aiding-abetting theory for a principal on an accomplice, we don't get to that point. You would have to skip through a variety of things that didn't happen in this case. So I see I'm over my time. If the Court has further questions about sufficiency or any other matter, I'm happy to address it. Otherwise, we'll stand on our briefs and believe that the District Court's denial of new trials for these defendants should be affirmed. Thank you very much, Mr. Shipley. Mr. Kluwe, you've got five minutes. Thank you, Your Honor. It's always a privilege to argue against Mr. Shipley. I don't think I'm that smart, but I do know I'm not as smart as Mr. Shipley. Nevertheless— Let me wade back in here a little bit. I've heard a lot of arguments, both from you and opposing counsel, on the sufficiency issue, and yet I'm going back and looking at the issues that you raised for this appeal, all affecting a Brady issue. And I'm having a hard time in the appeal that went forward before, at least as far as Mr. Bryant was concerned, indicated that evidence was overwhelming as to his conviction. Maybe not so much as Mr. McClendon, but they went ahead and upheld that. Now, that sufficiency issue, for me, is beyond the pale of the case that we have here. I'm having a hard time letting you show me—and I try not to ask a question unless I'm confused, and sometimes that's often—but anyway, how do you maintain that Brady, a Brady violation as to your—without arguing sufficiency, that your client gets the benefit of any kind of a Brady analysis in this case? Well, again, the reason why the evidence was considered overwhelming as to— Don't get into sufficiency. You've got me confused enough with that. I'm already past the sufficiency. I'm wanting to hear how you qualify your client under a Brady violation in this case, either as to all four counts or either as to 924C. Let's try count 24C, because I think I can go back to a question that Judge Jordan asked at the same time. Again, our track with the argument on 924C is that the district court entered an order, in our case it's a final order, finding a constitutional Brady violation as to Mack. No, and our opposing counsel is saying that didn't happen. That did happen. He's saying that he didn't grant a new trial. That may be the case. There Mack entered into settlement negotiations and didn't get a new trial. But in my case, he entered an order finding a constitutional Brady violation. There is no other order that I can deal with. As to whom? As to Mack. And the only reason, the only reason given by the district court, the only reason given by the district court for denying my client a new trial on count 924C is mistaken reliance on the Standiford case, which has nothing to do with this case because it's a successive trial case. So that it is impossible, given all of the other machinations, whether they're good or bad, put them aside. There is only one rationale in this order for denying my client 924C relief. And that rationale does not hold up because Standiford does not say that. Standiford implies the direct opposite in the case law that we've cited, including a 100-year-old Second Circuit case. It's clear as a bell. You cannot have the constitutional error infecting the trial of the eight and a better theory only defendants, not also have a constitutional error. And that may help you in a 924C argument. How does that help you then as to counts one, two, and three? It doesn't. But it certainly does affect the conspiracy question in terms of conspiracy as to Mack. Because again, once you find that you have the whole evidence as to Mack's involvement in conspiracy is now tainted, then all of the evidence that the Court of Appeals or any other court previously relied upon to find my client guilty of conspiracy because of some involvement of Mack also takes on a taint. So I think that that's, but that's the critical point. It is also, I believe, however, not tangentially, but I think it's tangential. But it is also true that the evidence is insufficient in my client's knowledge of the firearm or having anything to do with the firearm. And I have no doubt that I would have won the appeal if I didn't have, you know, if I didn't have to deal with this Mack guilt issue on the Rosemont question that I raised on a direct appeal. But that is not, because the only basis for the denial is not that. The only basis for the denial is standoffer. And standoffer is completely wrong. It's just pulled out of the air. And the government defended it, tried to defend it, but they didn't much defend it here today. The other part of the government's argument, and I, you know, I have these things, and I appreciate what the government is saying, Tyson did testify that he'd never seen money wrapped like that. But he backtracked because he had not done much work with drugs. And he backtracked and said, I guess it does happen. So Tyson actually was not bad on the wrapping of the money. It was Jackson. It was Jackson who testified that the wrapping of the The cases I've seen haven't even transported money. We don't transport money. And then the question from the government, the government introduces this of Agent Jackson, the star FBI agent, and in all the operations that you've worked on, have you ever seen money wrapped like that? Agent Jackson says no. And bang, my client goes down. And that's the truth. I mean, and you can say it didn't matter. Oh, no, it's on the tapes. The tapes were our defense. And this happens in a lot of cases. There is not a single word on that tape that anybody can rationally say that they never used the word kilo. They never used the word. They could have said kilo. It's nine kilos in a bag. They say, you know, be careful with the kilos. Something. You might be overstating your position just a tad. How so? Because individuals who are engaged in narcotics transactions don't always use terminology that people would use to refer to controlled substances. And it happens every once in a while. And I beg the court's indulgence to let me respond to that again. Again, putting aside the Martinez case, which I have deep in my heart, Mr. Gallo, who I represented and went to see him in South Carolina, deep in my heart, that case. But putting aside Martinez and the Edwards case and Charles and all the cases that followed, look at the specifics of this case. This was a money laundering case. That wasn't. That wasn't. Agent Jackson was a money laundering case. He's the one in the destroyed tape who says, I shifted it. It suddenly became a drug case. My point was not about this case, Mr. Kluge, but that you might have stretched a bit too far in suggesting that no one who engages in a drug transaction speaks in words other than kilo or cocaine or heroin or dope or stuff like that. I could speak for all day with words, but not a single one was used. Merchandise, the simplest little word, something that says something to take it out of the drugs. Once you've got a money laundering case, Club Dolce is selected because it's a Russian mafia money laundering operation that they got from Chilpayev. So this is the whole concept of money laundering. Brian says in a sworn statement, I specifically told Mac it was money. Everything, our whole defense was it was money. The tapes say nothing about money. So they put Jackson on. He says every single line that says nothing about drugs, he says it means drugs. We think we've got your position, but thank you very much. Most important point was that Jackson, it was Jackson with the money wrapping, not Tyson. Tyson helped us. Thank you. Thank you very much, Mr. Kluge.